STATE of North Dakota, Plaintiff
and Appellee,

v.

Scott GUSTAFSON, Defendant
and Appellant.

STATE of North Dakota, Plaintiff
and Appellee,

v.

Gordon NELSON, Defendant
and Appellant.

Cr. Nos. 633, 634.

Supreme Court of North Dakota.

April 12, 1979.

Greenwood, Greenwood & Greenwood, Dickinson, for defendants and appellants; argued by Mark L. Greenwood, Dickinson.

Albert J. Hardy, State's Atty., Dickinson, for plaintiff and appellee; on briefs only.

PEDERSON, Justice.

■ These are separate appeals asking for review under § 29–32–09, NDCC (Uni-

form Post-Conviction Procedure Act), from orders denying post-conviction remedies. Orders are considered judgments (see § 29–32–07, NDCC); however, no specific findings of fact or conclusions of law were made. Gustafson and Nelson moved for "judgment upon brief of appellant and to vacate judgment of trial court" because of the failure of the state's attorney to serve and file appellee's brief within 30 days after service of the appellant's brief, as required by Rule 31, NDRAppP. We decline to grant that motion as we do not consider that to be an appropriate action under Rule 13, NDRAppP.[1] We prefer to reach the merits. We reverse the judgments, set aside the convictions, and remand for further proceedings.

At an arraignment session the trial judge read a statement of basic rights to a group of suspects, which included Gustafson and Nelson, then followed with individual questioning. The state's attorney was not present but Norbert Sickler, an investigator representing the North Dakota Bureau of Criminal Investigation, was in the room and participated in some of the discussion. Both Gustafson and Nelson were present without counsel, and both entered pleas of guilty to the charge of unauthorized use of a vehicle in violation of § 12.1–23–06, NDCC. The record does not show whether Gustafson and Nelson received a copy of the complaint. At the arraignment the two complaints charged that on January 17, 1977, Gustafson and Nelson ". . . together with others, took, operated, or exercised control over a John Deere Snowmobile, 440 Cyclone, SN59783, valued at approximately $2,000.00, knowing that he did not have the consent of the owner, . . . ."

While interrogating Gustafson, the trial judge read the charge, then asked, "What plea do you enter?", and the response was

1. In *State v. Lueder*, 267 N.W.2d 555, 556 (N.D. 1978), we said that we look with strong disfavor upon the irresponsible practice of filing a late brief. We denied Lueder a judgment on his brief but said we would not permit oral argument by an appellee who files late without special permission. The State did not request permission to present oral argument in this case.

"Guilty." Thereafter Gustafson was asked if he understood that he had a right to consult an attorney, and that if he wished to have one and couldn't afford one the county would appoint an attorney for him, and the answer was "Yes." The judge also asked if there had been any threats or promises and the answer was "No." When Gustafson was responding to the question, "Tell me about what happened," the judge discovered that Gustafson did not admit to taking, operating or exercising control over a snowmobile, and that there was no factual basis for the plea of guilty. The judge said, "I'm going to refuse to accept your plea of guilty at this time . . . ." At this point Sickler entered the discussion, which is as follows:

"MR. SICKLER: Your Honor, could I say something on this?

"THE COURT: Let the record show Mr. Norbert Sickler has addressed the Court.

"MR. SICKLER: Your Honor, what date does the Criminal Complaint give on that? What year?

"THE COURT: January 17, 1977.

"MR. SICKLER: Okay, the subject I think is confused on the dates. I think in 1977 that's the situation when the snowmobile was taken onto a pickup. He's confused with '76. '77 is the date the Judge is talking about. And I think the Defendant is confused.

"THE COURT: Does Mr. Sickler's statement jog your memory?

"THE DEFENDANT: Yes. I thought you were talking about the Cyclone.

"THE COURT: This is called a Cyclone.

"MR. SICKLER: That is also a Cyclone, Your Honor. There were two Cyclones taken. This is in January of '77.

"THE DEFENDANT: That is the last one, correct?

"MR. SICKLER: Yes.

"THE COURT: What happened there?"

The discussion continued with Gustafson describing what happened on January 17, 1977, after which the court announced: "Okay, at this time I will accept the entry of your plea of guilty."

During the court's interrogation of Nelson, after a reading of the charge and Nelson responding with a plea of "Guilty," Nelson acknowledged that he understood that the county would appoint an attorney if he wanted one and could not afford to pay for one, and that there had been no threats or promises. In describing what happened, Nelson said he "took the Cyclone snowmobile . . . drove . . . [it] around for a while," and "ditched . . . [it] out there."

Both cases were continued for sentencing until November 23, 1977, at which time Gustafson, Nelson and an assistant prosecutor, Mr. Moench, were present. There was some preliminary discussion, which included the following question by the court to Gustafson:

"And after being advised of your rights and the Criminal Complaint against you, you entered a plea of guilty to the charge of taking a John Deere snowmobile on the 17th day of January, 1976, is that correct?"

Gustafson's response was "Mm-hmm."

The court thereupon asked if Gustafson wished to make any statement or to present any evidence in mitigation or aggravation of any sentence that might be imposed. Gustafson indicated several times that he did not understand, but finally, when the judge asked if he had any feeling about what the penalty should be, he said: "Probably probation, something like that."

Mr. Moench then recommended one-year confinement, suspended upon condition of no violations, and probation for that year. He added that ". . . this is the States Attorney's office recommendation. Mr. Sickler is out of town, and we are unable to get a hold of him for recommendations."

While the judge was commenting about his dissatisfaction with the recommendations, Mr. Moench interrupted and asked,

". . . did we ever amend the Complaint in this particular thing?" The judge said: "The Complaint I got, it originally charged 1977." Mr. Moench said: "And it's 1976. And, apparently, the snowmobile involved was a 440 Liquefier with no serial number."

The judge thereupon said: "I'll amend the Complaint by crossing out the word 'Cyclone, SN59783,' and adding in there the word 'Liquefier.' " Nothing was said about changing the date from 1977 to 1976 but the complaint now shows that that change was also made.

A sentence was then pronounced—a fine of $100.00 and one year at the State Farm in Bismarck for Gustafson.

At the sentencing hearing on November 23, 1977, the judge said:

"Mr. Nelson, you appeared before this Court also one week ago, were advised of your rights, and at that time entered a plea of guilty to the offense of having on the 17th day of January, 1977—"

Whereupon Mr. Moench interrupted by saying: "Excuse me, Your Honor. That Complaint should also be amended to 1976, and I would so move." The following discussion ensued:

"THE COURT: We had some discussion of that at the time.

"THE DEFENDANT: Yes.

"THE COURT: Mr. Sickler felt it was 1977, and I convinced you there were two occasions, and you misunderstood them.

"THE DEFENDANT: Mm-hmm.

"THE COURT: It was, in fact, 1976 you're charging, is that correct, Mr. Moench?

"MR. MOENCH: That's correct, Your Honor."

Further discussion followed, including a request by the court for recommendations from Nelson and Moench for sentencing. Nelson, among other things, said: ". . . hopefully, I can get some kind of deferred sentence of some type where I could still continue on with my schooling and, hopefully, better myself."

In response to the court's inquiry, Mr. Moench recommended one-year confinement, suspended on condition of no violations, and supervised probation. The judge imposed no fine but sentenced Nelson to one year at the State Farm and then asked: "Do you have any legal cause to show today why this judgment should not be entered?" Nelson responded: "No, nothing of the legal system."

Both Gustafson and Nelson were delivered to the warden at the state penitentiary on November 23, 1977, and, shortly thereafter, they retained counsel. Gustafson and Nelson properly moved, pursuant to Rule 32(d), NDRCrimP, for permission to withdraw their pleas and for post-conviction relief. Each also moved that the court reduce or commute his sentence pursuant to Rule 35, NDRCrimP. Both Gustafson and Nelson were returned from the penitentiary for the hearing on these motions and applications on December 7, 1977.

After the December 7 hearing, when all the motions and applications were consolidated without objection, the court denied the motions to withdraw the pleas, the applications for post-conviction relief, and the motions to have the sentences reduced or commuted.

At the December 7 hearing, both Gustafson and Nelson testified that a promise had been made to them by Mr. Sickler. Gustafson said Sickler told him " . . . that we'd probably—we would get probation, and after that year it would be taken off our record," and that deferred imposition "will no doubt be our sentence." Nelson said Sickler told him "that we no doubt would get probation" and "it would be wiped off our record." Mr. Sickler testified that he told them "we'd go on an imposition of delayed sentencing" and "that the States Attorney's Office had agreed to go on . . . imposition of delayed sentencing." Sickler could not recall whether he had said "no doubt" there would be a deferred imposition of sentence.

At that hearing, Mr. Moench said: " . . . Mr. Sickler did inform me these

two boys were cooperative. I think I informed the Court at the time of sentencing. Perhaps, I could have expanded. I don't know." He also said, "I don't believe, personally, there was a plea bargain or plea agreement involved in here, simply because I never had any contact with the two Defendants . . . ." Additional comments by Mr. Moench were: "I have no reason to doubt his [Sickler's] statement—that he indicated to me we should recommend a deferred imposition of sentence." "If there's any problem here, it's my fault, not anybody else's, . . . ."

On this appeal Gustafson and Nelson argue that there was not an informed waiver of counsel, there was not appropriate questioning about plea bargaining, and there was not specific information as to the specific elements of the charge. These issues are all related to the central question of this appeal: Was there a voluntary plea intelligently made?

Before we address these issues, however, we must consider the question of the propriety of using the Post-Conviction Procedure Act to make the challenges argued on these appeals. Section 29–32–01, NDCC, provides in relevant part that:

"1. Any person who has been convicted of, or sentenced for, a crime and who claims:

. . . . .

f. That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy;

may institute, without paying a filing fee, a proceeding under this chapter to secure relief."

 The voluntariness of the pleas of guilty and the waiver of counsel involve constitutional questions that are appropriately reviewable under Chapter 29–32, NDCC. See *State v. Rudolph*, 193 N.W.2d 237 (N.D.1971). In addition, as we said in *State v. Carmody*, 243 N.W.2d 348 (N.D. 1976), claims of violation of a law or any

collateral attack that otherwise would have been available as specified in § 29–32–01(1)(f), NDCC, are appropriately considered in a claim for post-conviction relief and are not waived by a failure to timely appeal from the convictions. We conclude that the issues are properly before us on these appeals and were not waived by the failure to appeal from the judgments of conviction.

 Gustafson and Nelson claim that the record does not show that they waived the right to be represented by counsel, and that waiver cannot be shown by silence. "Absent a knowing and intelligent waiver," every indigent, in misdemeanor cases involving a sentence of imprisonment, is entitled to appointed counsel at every stage of the proceedings from initial appearance through appeal. Rule 44, NDRCrimP. See also Rule 10, NDRCrimP. There are certain basic principles applicable to a determination of whether there has been a valid waiver of the right to counsel. Courts cannot force the services of an attorney upon an accused. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The right to counsel does not depend upon a request. *Kitchens v. Smith*, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971). A waiver of the right to counsel will not be presumed from a silent record. *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). Courts will indulge every reasonable presumption against waiver. *Boyd v. Dutton*, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972). The burden is upon the petitioner to show by a preponderance of the evidence that he did not intelligently and understandingly waive his right to counsel. *Moore v. Michigan*, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957).

 The record here is not silent. The trial court asked each of the defendants, Gustafson and Nelson, whether he understood that he had a right to an attorney and if he wished one but could not afford it, that one would be furnished by the county. Each responded that he understood this. When they were examined and cross-examined at the hearing on their application for

post-conviction relief, neither displayed a lack of understanding on this matter. Under these circumstances, although it would have been better had the court said, "Do you waive counsel?", the silence by the defendants in this case reflects an intelligent waiver. See *Bute v. Illinois*, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); and *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2720, 33 L.Ed.2d 346 (1972). See also *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for a discussion of the rules applicable to waivers of various fundamental rights.

 Next we will consider whether the pleas of guilty were voluntary and intelligently made under the standards prescribed by Rule 11(c) and (e), NDRCrimP. These standards require the court to determine whether a plea is voluntary and not the result of force or threats, or of promises apart from those contained in a plea agreement. The court must also ask whether the defendant's willingness to plead guilty results from his discussions with the prosecuting attorney. Rule 11(c), NDRCrimP. Notwithstanding acceptance of the plea, a judgment or dispositional order should not be entered unless the court is satisfied that there is a factual basis for the plea. Rule 11(e), NDRCrimP.

This court said in *State v. Storbakken*, 246 N.W.2d 78 (N.D.1976), that the failure to follow the exact format of Rule 11, NDRCrimP, but where there has been substantial compliance, is not a sufficient challenge warranting the setting aside of a guilty plea. See *Standards Relating to Pleas of Guilty*, Part I, subparts 1.5 and 1.6, American Bar Association, Approved Draft 1968.

As required by Rule 11(c), NDRCrimP, the trial judge, before accepting the pleas of guilty, specifically asked each of the defendants if there had been any force or threats or promises. Each replied "No." As required by Rule 11(e), NDRCrimP, the

trial judge inquired of Gustafson and Nelson as to the factual basis for their pleas of guilty. The court discovered, during its questioning of Gustafson, that there was some confusion with regard to both the year in which the offense charged was committed and the identification of the vehicle involved. Gustafson's guilty plea was first rejected but then, after some comments by Mr. Sickler, it was accepted. In our opinion, the confusion surrounding the entry of the pleas was not eliminated prior to acceptance by the court.

Rule 10, NDRCrimP, requires that the defendant shall be given a copy of the indictment, information, or complaint before he is called upon to plead. As previously indicated, Gustafson and Nelson apparently did not receive copies of the complaint. Furthermore, one week after the guilty pleas were accepted, before sentence was pronounced, the prosecutor "amends" the complaints. The complaint against Gustafson was amended by changing the date of the offense from "1977" to "1976" and the identification of the vehicle from a "440 Cyclone, SN59783" to a "Liquefier." The complaint against Nelson was apparently amended by changing the date of the offense from "1977" to "1976."

The comments by Mr. Sickler made at the arraignment hearing would indicate that these changes were improper. In any event, Gustafson and Nelson were not afforded an opportunity to plead to the amended complaints.

Pursuant to Rule 32(d), NDRCrimP, a court should permit the withdrawal of pleas of guilty when it is necessary to correct a manifest injustice. Mr. Sickler's testimony at the hearing on the applications for post-conviction relief illustrates the confusion in this case. Mr. Sickler's statements, which were not disclosed to the trial court prior to the pleas and sentencing, could be considered promises that the State would recommend "an imposition of delayed sentencing." This was not carried out when the State recommended "one year confinement, suspended." We conclude that there is more than a technical harmless error and

**364**

that there is a manifestation of injustice. See *State v. Wester*, 204 N.W.2d 109, 118 (N.D.1973), where we reversed and remanded in a unique situation where there was "confusion on the part of all concerned."

For these reasons, the judgments denying post-conviction relief are reversed and the cases are remanded for further proceedings, allowing a withdrawal of the pleas of guilty, and such further proceedings as may be necessary under the circumstances. In the interest of fairness to the trial court and the defendants, we direct that the presiding district judge of the Sixth Judicial District assign these cases to another judge for all further proceedings.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.