#23846-a-DG

**2006 SD 54**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,            Plaintiff and Appellee,

  v.

MYRON MILLER,            Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE A. PETER FULLER
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

JEREMY LUND
Special Assistant Attorney General
Legal Division
Department of Social Services
Pierre, South Dakota            Attorneys for plaintiff
                                      and appellee.

JOHN R. MURPHY
Rapid City, South Dakota            Attorney for defendant
                                      and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 24, 2006

OPINION FILED **06/21/06**

#23846

GILBERTSON, Chief Justice

[¶1.]        Myron Miller (Miller) was charged by indictment and arraigned on three counts of first degree rape and three alternative counts of sexual contact with a child under the age of sixteen.  He was informed of the possible maximum penalty at the arraignment but not the mandatory minimum.  Miller pleaded not guilty and proceeded to trial.  He was convicted on two counts of sexual contact with a child under the age of sixteen and sentenced to five years in the state penitentiary.  Miller appeals contending his constitutional rights were violated by the failure of the circuit court to advise him of the statutory mandatory minimum sentence he faced.  We affirm.

## FACTS AND PROCEDURE

[¶2.]        Miller was charged with three counts (Count I, III and V) of first degree rape under SDCL 22-22-1,[1] and three alternative counts (Counts II, IV and VI) of sexual contact with a child under the age of sixteen under SDCL 22-22-7.[2]  The charges resulted from an incident between Miller and B.K., the daughter of his girlfriend.  B.K. was eight or nine years old at the time of the molestation.  Miller's theory of defense was that L.K. urged B.K. to fabricate the sexual molestation in an

---

1.    SDCL 22-22-1(1) provides in relevant part:  "Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:  (1) If the victim is less than ten years of age[.] …A violation of subdivision (1) of this section is rape in the first degree, which is a Class 1 felony."

2.    SDCL 22-22-7 provides in relevant part:  "Any person, sixteen years of age or older, who knowingly engages in sexual contact with another person, other than that person's spouse if the other person is under the age of sixteen years is guilty of a Class 3 felony."

effort to prevail in the custody dispute between Miller and L.K. over the couple's child, C.M.

[¶3.] On April 5, 2004, at his arraignment, Miller was advised that the possible maximum penalty for first degree rape under SDCL 22-22-1(1) was life in prison, and the sexual contact charge under SDCL 22-22-7 had a maximum sentence of fifteen years. However, he was not advised of the possible minimum penalties under SDCL 22-22-1.2. SDCL 22-22-1.2 provides:

> If any adult is convicted of any of the following violations, the court shall impose the following minimum sentences:
> (1)  For a violation of subdivision 22-22-1(1), ten years for a first offense and twenty years for a subsequent offense; and
> (2)  For a violation of § 22-22-7 if the victim is less than ten years of age, five years for a first offense and ten years for a subsequent offense.

The State filed a Part II Habitual Offender Information that was eventually dismissed upon motion by Miller.

[¶4.] Prior to trial, Counts V and VI were dismissed by the State. Trial on the matter was held before a jury on February 22 through 25, 2005. Miller was acquitted on the first degree rape charges under Counts I and III, but was found guilty on the two charges of sexual contact with a minor under Counts II and IV. Miller moved for a directed verdict and judgment of acquittal at the close of the State's case and the close of the defense case. Both motions were denied.

[¶5.] After trial, Miller filed a motion for new trial and objections to mandatory minimum sentence, which were presented to the circuit court on July 1, 2005, and September 2, 2005. The circuit court denied Miller's motion for new trial. The circuit court found Miller had a due process right to notification of the

mandatory minimum sentence upon a plea of not guilty, and sustained his objection.

[¶6.] The circuit court advised the parties that it would follow the authority cited by Miller in his brief, *State v. Crawford*, 115 P3d 387 (WashAppCt 2005). The circuit court narrowed the issue to whether Miller had received notice of the mandatory minimum sentence such that his due process rights were not violated. The circuit court further held that under *Crawford,* any notice, whether from the State, the trial court, or defense counsel, would fulfill the due process requirement to provide notice of mandatory minimum penalties. The circuit court then ordered Miller's arraignment and trial counsel to testify at a hearing on the issue of notice.

[¶7.] Miller objected to the circuit court's broad interpretation of the notice requirement in *Crawford*, arguing instead that the duty to inform fell on the circuit court and not on defense counsel. Miller clearly and emphatically stated to the circuit court that he was not raising an ineffective assistance of counsel claim. Despite his objection, the circuit court called the defense attorney who represented Miller at the arraignment and the defense attorney who represented Miller at trial to testify against him. Miller's objection was overruled by the circuit court, which held that the attorney-client privilege would not prevent the court from gathering facts to determine whether Miller had received notice of the mandatory minimum sentences he faced. The circuit court found that the communication of "mere facts" between an attorney and client was not covered by the attorney-client privilege and that any exchange of information on minimum sentences was not a confidential communication.

[¶8.]     At the hearing, Miller's arraignment counsel testified that he did not recall discussing mandatory minimum sentences with Miller. His arraignment counsel also testified that a plea letter from the State to Miller during his representation did not reference the mandatory minimum sentences. Miller's trial counsel testified to plea negotiations that occurred with the State on the eve of trial. A letter from the state's attorney to trial counsel dated February 18, 2005, was introduced in which two vague references to the mandatory minimum penalties were made. Trial counsel testified that he did not send the letter to Miller, but that he discussed the contents of the letter with him the weekend before the trial.

[¶9.]     Thereafter, the circuit court granted Miller's objection and refused to apply the mandatory minimum sentences, instead holding that Miller's due process rights were violated when he was not given notice either before or during trial that he faced a mandatory minimum sentence. After mitigation testimony was received, the circuit court orally imposed a fifteen-year penitentiary sentence on Count II, but suspended the entire sentence. As to Count IV, Miller was sentenced to fifteen years in prison with five years suspended. The sentences were imposed consecutively.

[¶10.]     Miller appeals the circuit court's denial of his motion for new trial contending his Fifth Amendment due process rights were violated when he was not advised by the circuit court that he faced potential mandatory minimum sentences. He also contends the circuit court erred when it found that the attorney-client privilege did not apply to communications between Miller and his counsel as to the mandatory minimum penalties. We reframe his issue as follows:

Whether a defendant who pleads not guilty suffers a violation of his Fifth Amendment right to due process such that a new trial is warranted when the circuit court fails to advise him of the statutory mandatory minimum sentences for the charges he faces.

## STANDARD OF REVIEW

[¶11.] Appeals asserting an infringement of a constitutional right are reviewed under the de novo standard of review. State v. Dillon, 2001 SD 97, ¶12, 632 NW2d 37, 43 (citing State v. Stanga, 2000 SD 129, ¶8, 617 NW2d 486, 488). A direct appeal from a conviction must be afforded greater scrutiny than a collateral challenge by habeas corpus action. State v. Moeller, 511 NW2d 803, 809 (SD 1994). Thus, on a direct appeal from a conviction the defendant is entitled to all presumptions and protections possible under our constitution. *Id.*

## ANALYSIS AND DECISION

[¶12.] Miller argues that he was entitled under the Due Process Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, to notice of the mandatory minimum penalties he faced upon entering a plea of not guilty. Miller concedes that this issue is not controlled by statute, as SDCL 23A-7-4 pertains to defendants who enter a plea of guilty or nolo contendere.

[¶13.] The Due Process Clause of the Fifth Amendment provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process of law*; nor shall private property be taken for public use, without just compensation.

US Const. amend V (emphasis added). The Due Process Clause serves to safeguard against an unintentional or coerced relinquishment of known rights and privileges. Boykin v. Alabama, 395 US 238, 243 n5, 89 SCt 1709, 1712 n5, 23 LEd2d 274 (1969) (citing Johnson v. Zerbst, 304 US 458, 464, 58 SCt 1019, 1023, 82 LEd 1461 (1938)).

[¶14.]     In the context of criminal prosecutions, the Due Process Clause safeguards against an involuntary and unknowing waiver of three important federal rights via a plea of guilty or plea of nolo contendere, 1) the privilege against compulsory self-incrimination, 2) the right to a speedy trial, and 3) the right to confront one's accusers. *Id*. at 243, 89 SCt at 1712, 23 LEd2d 274 (citing Duncan v. Louisiana, 391 US 145, 88 SCt 1444, 20 LEd2d 491 (1968); Pointer v. Texas, 380 US 400, 85 SCt 1065, 13 LEd2d 923 (1965); Malloy v. Hogan, 378 US 1, 84 SCt 1489, 12 LEd2d 653 (1964)). In order to affect a voluntary and knowing waiver of these rights via a guilty plea or plea of nolo contendere, the court must be satisfied that a defendant understands that such a plea is a relinquishment of these rights and what these rights entail. *Id*.

[¶15.]     In addition to waiving these three constitutional rights, a defendant who pleads guilty is also entering an admission to all the elements of the formal criminal charge(s) against him. *Id*. at 243 n5, 89 SCt at 1712 n5, 23 LEd2d 274 (quoting *Johnson*, 304 US at 466, 58 SCt at 1171, 82 LEd2d 1461). Therefore, a defendant cannot make an admission to all the elements of a crime unless he possesses an understanding of the law in relation to the facts. *Id*. at 243-44, 89 SCt at 1712-13, 23 LEd2d 274. The court must ascertain that the defendant

understands what a guilty plea entails and the consequences he will face as a result of the plea. *Id.*

[¶16.]    However, there is no constitutional right to be offered the opportunity to plea bargain. Weatherford v. Busey, 429 US 545, 561, 97 SCt 837, 846, 51 LEd2d 30 (1977); Nguyen v. United States, 114 F3d 699 (8th Cir 1997) (quoting United States v. Gonzales, 65 F3d 814, 823 (10thCir 1995)) (citations omitted); People v. Curry, 687 NE2d 877 (Ill 1997) (citing People v. Palmer, 643 NE2d 797 (Ill 1994)); State v. McKinney, 917 P2d 1214 (Ariz 1996) (citing State v. Draper, 784 P2d 259, 266 (Ariz 1989); State v. Morse, 617 P2d 1141, 1147-48 (Ariz 1980)); Medina v. State, 688 So2d 727 (Miss 1996) (quoting *Weatherford*, 429 US at 561, 97 SCt at 846, 51 LEd2d 30); Carpenter v. State, 929 P2d 988 (OklaCrimApp 1996) (citing State ex rel. Stout v. Craytor, 753 P2d 1365, 1368 (OklaCrimApp 1988)). Only when a prosecutor offers a defendant the opportunity to enter into a plea agreement, must the circuit court ascertain that the defendant entered it voluntarily and knowingly and the circuit court must advise the defendant of both the statutory maximum and mandatory minimum sentence faced. State v. Richards, 2002 SD 18, ¶7, 640 NW2d 480, 481-82 (quoting SDCL 23A-7-4(1) (citing State v. Wilson, 459 NW2d 457 (SD 1990))).

[¶17.]    To ensure that guilty pleas and pleas of nolo contendere are voluntary and knowing and to safeguard against violations of a defendant's right to due

#23846

process, Rule 11 of the Federal Rules of Criminal Procedure was enacted.[3]

McCarthy v. United States, 394 US 459, 465, 89 SCt 1166, 1170, 22 LEd2d 418

(1960) (citing Machibroda v. United States, 368 US 487, 493, 82 SCt 510, 513, 7

LEd2d 473 (1962); Von Moltke v. Gillies, 332 US 708, 68 SCt 316, 92 LEd 309

(1948); Waley v. Johnston, 316 US 101, 62 SCt 964, 86 LEd 1302 (1942)).  However,

the procedure embodied in Rule 11 is not mandated by the United States

Constitution.  *Id.* (citing Waddy v. Heer, 383 F2d 789 (6th Cir 1967)).  Rather, it is

designed to assist the courts with making the constitutionally required

determination that a defendant's guilty plea is voluntary and knowing, and to

produce a complete record of the voluntariness determination.  *Id.*  More

---

3.      Rule 11 provides in relevant part:

Before the court accepts a plea of guilty or nolo contendere, the
defendant may be placed under oath, and the court must address the
defendant personally in open court.  During this address, the court
must inform the defendant of, and determine that the defendant
understands, the following:
. . .
(B)     the right to plead not guilty, or having already so pleaded, to
        persist in that plea;
(C)     the right to a jury trial;
(D)     the right to be represented by counsel--and if necessary have the
        court appoint counsel--at trial and at every other stage of the
        proceeding;
(E)     the right at trial to confront and cross-examine adverse
        witnesses, to be protected from compelled self-incrimination, to
        testify and present evidence, and to compel the attendance of
        witnesses;
(F)     the defendant's waiver of these trial rights if the court accepts a
        plea of guilty or nolo contendere;
(G)     the nature of each charge to which the defendant is pleading;
(H)     any maximum possible penalty, including imprisonment, fine,
        and term of supervised release;
(I)     any mandatory minimum penalty[.]

importantly, the advisement of these rights and penalties under Rule 11 is applicable only when a defendant intends to enter a plea of guilty or nolo contendere. FedRCrimP 11(a)(1). A defendant who elects to plead not guilty and proceed to trial is not provided the same procedural safeguards under Rule 11 as a defendant who pleads guilty or nolo contendere. *See* United States v. Robertson, 698 F2d 703, 709 (5thCir 1983) (noting Rule 11 protections not applicable to a defendant who pleads not guilty even when not guilty plea is coupled with an inculpatory stipulation of facts) (citing Witherspoon v. United States, 633 F2d 1247, 1252 (6thCir 1980), *cert. denied*, 450 US 933, 101 SCt 1396, 67 LEd2d 367 (1981); United States v. Strother, 578 F2d 397, 404-05 (DCCir 1978); United States v. Terrack, 515 F2d 558, 560 (9thCir 1975)); Gerald v. United States, 405 FSupp 404, 406 (EDNC 1975) (noting that "[u]pon a plea of not guilty the court is not required to explain the elements of the offense, or explore with the defendant the range of possible defenses.").

[¶18.] SDCL 23A-7-4, South Dakota's version of Rule 11 of the Federal Rules of Criminal Procedure, provides:

> Before accepting a plea of guilty or nolo contendere a court must address the defendant personally in open court, subject to the exception stated in § 23A-7-5, and inform him of, and determine that he understands, the following:
> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;
> (2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceedings against him and, if necessary, one will be appointed to represent him;
> (3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to assistance of counsel, the right to confront and

> cross-examine witnesses against him, and the right not to be compelled to incriminate himself;
>
> (4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and
>
> (5) That if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury.

South Dakota's version of Rule 11 also serves as a procedural safeguard for determining that a guilty plea or plea of nolo contendere is voluntary and knowing. State v. DeNoyer, 541 NW2d 725, 729 (SD 1995). The language of SDCL 23A-7-4 makes it clear that the circuit court is required to give an advisement of any mandatory minimum sentence the defendant might face only when the defendant enters a plea of guilty or nolo contendere

[¶19.]        Furthermore, SDCL 23A-7-15 provides:

> A verbatim record of the proceedings at which a defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the factual basis of a guilty plea. A verbatim record of a proceeding at which a defendant enters a plea to a misdemeanor need not be taken unless requested by the prosecuting attorney or the defendant.

SDCL 23A-7-15 requires the circuit court to inquire on the record into the voluntariness and the factual basis of a guilty plea or plea of nolo contendere. No such inquiry is required for a not guilty plea. *See* SDCL 23A-7-15.

[¶20.]     The North Dakota Supreme Court addressed a similar issue in *City of Fargo v. Bommersbach*, 511 NW2d 563 (ND 1994). In that case, the defendant pleaded not guilty to driving a motor vehicle while his driver's license was suspended. *Id*. at 564. The defendant's license had been suspended as the result of a violation of N.D.C.C. § 39-08-01(1), driving with a blood alcohol level by weight of .10 or greater. *Id*. The trial court, without objection, sentenced the defendant to thirty days in jail with twenty-six days suspended, and the four remaining days to be served consecutively in accordance with N.D.C.C. § 39-06-42(2). *Id*. N.D.C.C. § 39-06-42(2) provided in relevant part: "[i]f the suspension or revocation was imposed for violation of section 39-08-01 [driving under the influence or with a blood alcohol weight in excess of .10] . . ., the sentence must be at least four consecutive days' imprisonment and such fine as the court deems proper." *Id*.

[¶21.]     On appeal, the defendant argued the circuit court committed reversible error when it failed to inform him of the mandatory minimum sentence he faced under N.D.C.C. § 39-06-42(2) prior to trial. *Id*. at 564-65. The defendant relied on authority from cases in which defendants were not afforded an opportunity to plead to an amended complaint, and authority that dealt with the use of prior convictions for offense-enhancing purposes. *Id*. (citing State v. Gahner, 413 NW2d 359 (ND 1987); State v. Edinger, 331 NW2d 553 (ND 1983); State v. Gustafson, 278 NW2d 358 (ND 1978); State v. Ruble, 77 ND 79, 40 NW2d 794 (1950)). The North Dakota Supreme Court noted that there was no failure to allow the defendant to plead anew to a new or amended complaint at issue in *Bommersbach*, and therefore the holding in *Gustafson*, 278 NW2d 358, did not apply. *Id*. at 565. That court

acknowledged that offense-enhancing (increasing the classification of the offense) and sentence-enhancing (increasing the maximum sentence) use of a prior conviction require notice to the defendant that the State intends to use prior convictions for enhancement purposes. *Id.* However, in *Bommersbach* that court held that N.D.C.C. § 39-06-42(2) "provides a minimum sentence for a particular type of driving-while-under-suspension conviction; it does not deal with offense-enhacing or sentence enhancing prior convictions." *Id.* Finally, the North Dakota Supreme Court held that the North Dakota Rules of Criminal Procedure do not require specific notice of a mandatory minimum sentence upon a plea of not guilty. *Id.* at 565.

[¶22.] The language of Rule 11 of the Federal Rules of Criminal Procedure and NDR CrimP Rule 11(b)[4] parallel South Dakota's version, in that it requires the

---

4. North Dakota Rules of Criminal Procedure Rule 11(b) provides in relevant part:
   (b) Advice to defendant.
   (1) The court may not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(b)] in open court, informing the defendant of and determining that the defendant understands the following:
   (A) the right to plead not guilty, or having already so pleaded, to persist in that plea;
   (B) the right to a jury trial;
   (C) the right to be represented by counsel at trial and at every other stage of the proceeding and, if necessary, the right to have the court appoint counsel under Rule 44;
   (D) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;
   (E) the defendant's waiver of these trial rights if the court accepts a plea of guilty;
   (F) the nature of each charge to which the defendant is
   (continued . . .)

trial court to advise the defendant of the mandatory minimum penalty only upon a plea of guilty or nolo contendere. Miller concedes that his alleged due process right to be advised by the circuit court of the mandatory minimum penalty does not have as its source SDCL 23A-7-4. However, as support for his proposition that he had a constitutional right to an advisement of the mandatory minimum penalty, Miller cites to *State v. Richards*, 2002 SD 18, 640 NW2d 480, a case that deals exclusively with the statutory right under SDCL 23A-7-4(1) to an advisement of the mandatory minimum penalty upon a plea of guilty. Given that Miller has waived the statutory argument, *Richards* offers no support for his contention that he had a due process right under the constitution to an advisement of the mandatory minimum penalty upon a plea of not guilty. Even if Miller had not waived the statutory argument, the above discussion makes it abundantly clear there is no such constitutional right upon entering a plea of not guilty.

[¶23.] The only other case that Miller cites to in support of his claim of a violation of his due process rights is *State v. Crawford*, 115 P3d 387. In *Crawford* the defendant pleaded not guilty to first-degree robbery and second-degree assault. 115 P3d at 388-89. At the time of trial, Crawford was unknowingly facing a mandatory minimum sentence of life in prison without parole under Washington's Persistent Offender Accountability Act. *Id*. at 389. However, neither the

---

(. . . continued)

                    pleading;

(G)    any maximum possible penalty, including imprisonment, fine, and mandatory fee;

(H)    any *mandatory minimum penalty*[.] (emphasis added).

prosecutor nor defense counsel were aware that the sentence would be subject to a mandatory enhancement as neither realized at the time of prosecution that both of Crawford's two previous convictions, one for first degree sex abuse in Kentucky and a Washington conviction for second degree robbery, would both count as "strikes" under Washington's persistent offender enhancement scheme. *Id.*

[¶24.]     The question before the Washington Court of Appeals was "whether a defendant receives due process if he or she is sentenced to a mandatory minimum term of life without parole without *any* notice, before or during trial, that such a sentence is even possible." *Id.* at 390. As that court noted "it is fundamentally unfair for the State not to notify a person before trial that he may be subject to a mandatory sentence of life without parole." *Id.* at 391. It therefore reversed the conviction on due process grounds, noting that procedurally the defendant was entitled to know that he faced such a harsh sentence prior to trial. *Id.* The underlying rationale for that court's decision was that "the person needs to know that such a sentence is possible when deciding how intensively to investigate, when deciding how intensively to plea bargain, and when deciding whether trial or plea is the better alternative." *Id.*

[¶25.]     *Crawford* provides no support for Miller's contention despite the fact that the defendant in that case pleaded not guilty and proceeded to trial. The issue before the Washington Court of Appeals was whether sentencing enhancement

under a habitual criminal statutory scheme without notice that the defendant faced a minimum mandatory life sentence without parole was constitutional. *Id.*[5]

[¶26.] In the instant case, Miller was not facing the potential for a mandatory minimum life sentence without parole. Nor was Miller faced with such an enhancement to the sentence due to the State's use of a prior conviction. Rather, Miller, like the defendant in *Bommersbach*, was facing "a minimum sentence for a particular type of [violation of SDCL 22-22-7 for sexual contact with-a-victim-less-than-ten-years of age.]" (*Bommersbach*, 511 NW2d at 565). SDCL 22-22-7 and SDCL 22-22-1.2 do not provide offense or sentence enhancements based on prior convictions for a defendant facing his first conviction on a charge of sexual contact with a victim under the age of sixteen.

[¶27.] Miller's argument under the due process clause must fail. Miller was prosecuted for sexual contact with a victim less than sixteen years of age. SDCL 22-22-7 gives clear notice that the offense is punishable as a Class 3 felony. SDCL 22-22-1.2 gives further notice that penalties for sexual contact with a person under the age of ten are more severe in nature. Miller cannot now cry foul and attempt an end run around the penalty for sexual contact with a victim under the age of ten by claiming the circuit court failed to advise him of the mandatory minimum penalty

---

5. South Dakota's statutory scheme also provides that a defendant must be given notice, either at the time of or before arraignment, of the State's intent to seek an enhanced penalty under the habitual offender statutory scheme in SDCL Chapter 22-7. Notice to the defendant is required per the provisions of SDCL 22-7-11. We have also held that the habitual offender act should be strictly construed in order to ensure that a defendant is fully aware prior to pleading to the principal felony, that he faces the possibility of an enhanced sentence. State v. Heftel, 513 NW2d 397, 402-03 (SD 1994).

so clearly articulated in SDCL 22-22-1.2, especially when Miller had no constitutional right to such an advisement.

[¶28.]     The circuit court erred when it held that Miller was entitled to such advisements upon a plea of not guilty and refused to impose the mandatory minimum sentence.  However, given that Miller received an effective sentence of ten years, which is the same amount of prison time he would have received had the circuit court imposed two consecutive five-year mandatory minimums, the error is harmless and as a consequence Miller suffered no prejudice.  Because we hold that the defendant was not entitled by statute or by the Due Process Clause of the Constitution to an advisement of the mandatory minimum upon a plea of not guilty, we do not need to address Miller's claim that the attorney-client privilege prohibited the circuit court from requiring testimony from his arraignment and trial counsel concerning the advisement.  We affirm.

[¶29.]     SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

[¶30.]     ZINTER, Justice, concurs with a writing.


ZINTER, Justice (concurring).

[¶31.]     I generally concur.  I would hold that because the circuit court expressly declined to apply the mandatory minimum sentence, Miller suffered no prejudice.