115 P.3d 387 (2005)
STATE of Washington, Respondent,
v.
Darnell Keeno CRAWFORD, Appellant.
No. 30650-6-II.
Court of Appeals of Washington, Division Two.
July 12, 2005.
*388 Kathleen Proctor, Pierce County Prosecuting Atty. Office, Tacoma, WA, for Respondent.
Leslie Orville Stomsvik, Attorney at Law, Tacoma, WA, for Appellant.
MORGAN, A.C.J.
¶ 1 Darnell Keeno Crawford appeals convictions for first degree robbery and second degree assault. The questions are (1) whether the State violated his constitutional right to due process by not giving him any notice before or during trial that he was facing incarceration for the remainder of his natural life, and (2) whether his counsel rendered ineffective assistance by not advising him before or during trial that he was facing incarceration for the remainder of his natural life. We reverse and remand.
¶ 2 In 1993, Crawford was convicted in Kentucky of a crime called sex abuse in the first degree.[1] In 1998, he was convicted in Washington of second degree robbery.[2] According to the later determination of the trial court in this case, each conviction was a "most serious offense"  in less formal terms, a "strike"  for purposes of Washington's Persistent Offender Accountability Act.[3]
¶ 3 On December 26, 2002, Crawford allegedly shoplifted an MP3 player from a Tacoma store. When pursued by store employees, he allegedly pointed a gun at them and a bystander. He was caught a few blocks away and charged with first-degree robbery[4] *389 and second-degree assault.[5]
¶ 4 Before trial, both the prosecutor and defense counsel knew about Crawford's previous Washington conviction for second degree robbery, as well as his previous Kentucky conviction for first degree sex abuse. Each realized that the Washington conviction was a "strike," but neither investigated the Kentucky conviction enough to know that it might be a "strike" also. Accordingly, neither the State nor defense counsel provided Crawford with any notice that he might be subject to a mandatory minimum sentence of life without the possibility of parole.
¶ 5 Before trial, the prosecutor offered to recommend a sentence at the low end of the standard range, in exchange for Crawford's pleading guilty as charged. Thinking that his standard range was 57-75 months, Crawford decided to reject the offer, not to initiate an offer himself, and to proceed to trial. His counsel concurred with those decisions, reasoning that Crawford would probably receive a standard range sentence, and that the difference between the low and high ends of the standard range "was not much inducement to plea[d] rather than take a chance at prevailing at trial."[6]
¶ 6 On April 16, 2003, a jury found Crawford guilty as charged. By May 15, 2003, the prosecutor and defense counsel had realized that Crawford might have two prior "strikes," and defense counsel notified him for the first time that he might be subject to a mandatory minimum sentence of life without parole. Crawford filed a motion for new counsel, which was granted, and also a post-trial motion for dismissal or new trial.
¶ 7 The trial court took evidence on the motion for dismissal or new trial. Crawford testified that he had not known until May 15, 2003, that he was facing a mandatory sentence of life without parole, and that if he had known earlier, he would have accepted the prosecutor's offer to recommend 57 months. Crawford's trial counsel testified that she had known of the Kentucky conviction before trial; that she had not realized until after trial that it might be a "strike"; and thus that she had not informed Crawford until "[a]pproximately three weeks after the verdict was rendered" that he might be facing a mandatory minimum sentence of life without parole.[7] The trial prosecutor testified by declaration that although she had known of the Kentucky conviction before trial, she had not known it was a "strike" when she offered to recommend 57 months, and that she had first realized it was a "strike" after Crawford had been convicted. A "mitigation specialist" for the public defender office testified that she had successfully mitigated all twelve third-strike cases in which she had participated, and that she would have prepared a mitigation package for Crawford if anyone had realized during plea bargaining that he was facing mandatory life without parole.
¶ 8 After hearing this evidence, the trial court denied the motion. It stated:
Well, let me tell you, our system provides a remedy here for Mr. Crawford. First of all, he's had a trial, he's had his rights of appeal, finding of guilty by a jury, and that's all preserved, obviously, because he hasn't even been sentenced yet. So the question of the fairness of his trial is going to be reviewed and that can include this.
I think it's the responsibility of the appellate court to look at this issue and maybe finally provide us some case law with reference to his denial of due process because of the three strikes Kentucky matter that he was unaware of. And I'm not going to repeat what I've already said as far as his criminal history and the discretion of the State to file whatever charges and what affect filing a mitigation would have. And inherent in all this also is the effective assistance of counsel. All those things are preserved.
But I'm going to deny the motion to dismiss. I'm going to deny the motion for a new trial.[[8]]
*390 The court then imposed a mandatory minimum sentence of life in prison without parole.
¶ 9 We address two questions. First, was Crawford denied procedural due process because he was not given any notice before or during trial that he was facing incarceration for the remainder of his natural life? Second, did Crawford's counsel render ineffective assistance because she did not advise him before or during trial that he was facing incarceration for the remainder of his natural life?

I.
¶ 10 The first question is whether a defendant receives due process if he or she is sentenced to a mandatory minimum term of life without parole without any notice, before or during trial, that such a sentence is even possible. The answer is no.
¶ 11 In State v. Thorne,[9] the Washington Supreme Court held that a person may constitutionally be sentenced to a mandatory minimum of life without parole, even though he has not been charged with being a persistent offender.[10] The court reasoned that "no `charging document' is required. . . because no crime is being charged; rather, a sentence is being imposed."[11] But given that Thorne had received "early actual notice" of the State's intent to treat him as a persistent offender,[12] the court reserved for another day whether due process permits a trial court to treat a person as a persistent offender, and impose a mandatory minimum term of life without parole, when the person lacks any notice until after trial. The court commented:

*391 In this case, the Defendant was informed early in the process that sentencing under the Persistent Offender Accountability Act would be sought by the State. . . . We specifically approve of the State giving the accused early notice of the sentence provided by the Persistent Offender Accountability Act when a defendant is accused of committing a third most serious offense. Although formal charging is not constitutionally mandated because the Act involves sentencing and not filing of a criminal charge, we nonetheless find early notice of the potential sentence to be appropriate. There may be cases in which the failure to give any notice would have constitutional implications. However, since there was early actual notice in the case before us, we decline to speculate on any possible prejudice to future defendants who lacked notice of the State's intent to prove the defendant was a persistent offender.[[13]]
¶ 12 The italicized language includes this case. It is fundamentally unfair for the State not to notify a person before trial that he may be subject to a mandatory sentence of life without parole. The person needs to know that such a sentence is possible when deciding how intensively to investigate, when deciding how intensively to plea bargain, and when deciding whether trial or plea is the better alternative. Indeed, it "shocks the conscience"[14] to put a person on trial for the remainder of his natural life without giving him any notice of that fact. Concluding that Crawford was denied procedural due process, we vacate and remand for further proceedings.

II.
¶ 13 To show ineffective assistance, a defendant must show deficient performance and resulting prejudice.[15] Performance is deficient if, taking all the facts and circumstances into account, it falls below an objective standard of reasonableness.[16] It is prejudicial if it creates a reasonable probability that but for counsel's errors, the proceeding would have had a different outcome.[17]
¶ 14 Division Three applied these concepts in In re McCready.[18] McCready was originally charged with first degree assault, so faced an enhanced standard range of 162-196 months and an enhanced mandatory minimum term of 120 months. He was not advised by the State or defense counsel that he was subject to the mandatory minimum term. The State offered to reduce from first to second degree assault and to recommend an enhanced standard range of 42-48 months, apparently without any mandatory minimum term.[19] Unaware of the mandatory minimum term for the first degree offense, McCready rejected the State's offer, went to trial, and was convicted. He became aware of the mandatory minimum term when, at sentencing, it was imposed on him. He then brought a personal restraint petition in which he alleged that his attorney had performed deficiently by not informing him of the mandatory minimum term, and that the deficiency was prejudicial because, if he had been properly informed, he would have accepted the State's offered plea bargain.[20] Division Three ruled that his attorney had performed deficiently by not informing him of the mandatory minimum term, and, in addition, that he had been prejudiced because he had decided to reject the State's plea offer without understanding the consequences of doing that.[21] Thus, Division Three granted his petition and remanded for further proceedings.
*392 ¶ 15 Whereas McCready's counsel failed to advise him of a mandatory minimum term of 120 months, Crawford's counsel failed to advise him of a mandatory minimum term of life without parole. This failure constituted deficient performance, as any reasonable attorney would have investigated and examined Crawford's Kentucky conviction before recommending trial as a better or equivalent alternative to preparing a mitigation package and engaging in intensive plea negotiations. This failure was prejudicial because without it, according to testimony from the defender's mitigation specialist, she would have prepared and presented a mitigation package that would have given Crawford a reasonable probability of not being sentenced as a persistent offender. Concluding that Crawford was denied the effective assistance of counsel as well as procedural due process, we vacate the judgment and remand for further proceedings.
I concur: HOUGHTON, J.
Hunt, J. (Concurring in part and dissenting in part).
¶ 16 I fully concur in Part II of the majority's analysis and its reversal of Crawford's convictions based on ineffective assistance of counsel and Division Three's opinion in Personal Restraint Petition of McCready, 100 Wash.App. 259, 996 P.2d 658 (2000). In my view, however, it is unnecessary for the majority to address the due process issue in Part I of the Analysis because we can reverse solely on the ineffective assistance of counsel ground. In addition, I respectfully disagree with the majority's resolution of the due process issue in Part I.
¶ 17 It also seems to me that the majority's analysis in Part I shifts the focus away from the primary default in this case, namely defense counsel's failure to investigate the possibility that Crawford's prior Kentucky conviction might be considered a "strike" for purposes of the Persistent Offender Accountability Act, RCW 9.94A.030(28) and (32) and to advise Crawford that he might be subject to a mandatory life sentence without parole. Although the State may have been negligent in its duty to follow the legislative mandate for persistent offenders, the State did not deny Crawford due process in failing to investigate his prior Kentucky conviction before entering into plea negotiations with Crawford.
¶ 18 Even if the State had undertaken such an investigation and informed Crawford that it would treat his Kentucky conviction as a prior strike, his sentence would have been life without parole whether he pleaded guilty or went to trial. As our Supreme Court has noted:
The language of the statute is unambiguous in its requirement that every persistent offender, as defined in RCW 9.94A.030(27), must be sentenced to life imprisonment without possibility of parole. There is no room for prosecutorial discretion.
State v. Thorne, 129 Wash.2d 736, 765, 921 P.2d 514, 527 (1996).
¶ 19 As the Supreme Court acknowledged in Thorne,
There may be cases in which the failure to give any notice would have constitutional implications. However, since there was early actual notice in the case before us, we decline to speculate on any possible prejudice to future defendants who lacked notice of the State's intent to prove the defendant was a persistent offender.
Thorne, 129 Wash.2d at 781, 921 P.2d 514. The instant case, however, does not fit within the Supreme Court's possible exception in Thorne. Here, we cannot find prejudice to Crawford based on the State's failure to investigate and to notify him pre-trial that his prior Kentucky conviction might count as a strike offense under the POAA.
¶ 20 Although the State might have agreed to recommend the same low-end standard range sentence in exchange for Crawford's guilty plea, even if it had verified the status of his Kentucky conviction, such a recommendation would have had no effect in lessening the life sentence the law required the sentencing court to impose:
[T]he Persistent Offender Accountability Act does not give the prosecutor a veto over persistent offender sentencing.
. . . .

*393 A prosecutor may negotiate plea agreements, but "in no instance may the prosecutor agree not to allege prior convictions" of a defendant as part of a plea agreement. RCW 9.94A.080(6).
In order for a sentencing judge to impose a sentence under the SRA, the judge must receive, generally from the prosecutor, a list of the prior offenses of the defendant. Once the prior offenses and the seriousness level of the crimes are determined, the sentencing decision is limited by the terms of the SRA. . . .
[W]here an offender fits within the definition of "persistent offender," the sentencing terms of the law are mandatory.
Thorne, 129 Wash.2d at 762-64, 921 P.2d 514.
¶ 21 Furthermore, the majority's analysis in Part I does not fully address situations where the State does not learn about or obtain verification of a defendant's prior convictions before trial and, therefore, would not be in a position to give a defendant prior notice. Nonetheless, under the mandatory statutory terms, as underscored by our Supreme Court in Thorne, the sentencing court is required to impose a life sentence without parole so long as the State informs the court of the defendant's prior strike offenses at the time of sentencing.
¶ 22 As the Supreme Court noted in Thorne, "We do not have the right to mandate particular procedures greater than the procedures required by the statute unless the procedures run afoul of a constitutional requirement." Thorne, 129 Wash.2d at 778, 921 P.2d 514. In my view, the majority unnecessarily expands POAA procedures in Part I of its analysis; I respectfully disagree that the procedure in this case ran afoul of a constitutional requirement, namely due process. Again, as our Supreme Court has explained,
The Persistent Offender Accountability Act allows, but does not mandate, notification and warning by a judge, law enforcement agency or correctional facility to offenders who have been convicted of an offense which is a "most serious offense." RCW 9.94A.393.
Thorne, 129 Wash.2d at 779, 921 P.2d 514 (emphasis added).
¶ 23 Accordingly, I would strike Part I of the majority's analysis and issue Part II only.
NOTES
[1] A violation of former KY.REV.STAT. ANN. § 510.110, which provided:

(1) A person is guilty of sexual abuse in the first degree when:
(a) He subjects another person to sexual contact by forcible compulsion; or
(b) He subjects another person to sexual contact who is incapable of consent because he:
1. Is physically helpless; or
2. Is less than twelve (12) years old.
Clerk's Papers (CP) at 16. According to KY.REV.STAT. ANN. § 510.010(7), "sexual contact" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party." CP at 18.
[2] See RCW 9A.56.190; RCW 9A.56.210.
[3] See RCW 9.94A.030(28); RCW 9.94A.030(32).
[4] See RCW 9A.56.190; RCW 9A.56.200(1)(a)(i)(ii).
[5] See RCW 9A.36.021(1)(c).
[6] Report of Proceedings (RP) at 303-04.
[7] RP at 303.
[8] RP at 331-32.
[9] 129 Wash.2d 736, 921 P.2d 514 (1996).
[10] Before Thorne, the Washington courts had held many times that due process requires the State to formally allege a mandatory minimum term in its information. In re Bush, 95 Wash.2d 551, 554, 627 P.2d 953 (1981) (the enhanced penalty "allegation must be included in the information"); State v. Theroff, 95 Wash.2d 385, 392, 622 P.2d 1240 (1980) ("When prosecutors seek enhanced penalties, notice of their intent must be set forth in the information."); State v. Cosner, 85 Wash.2d 45, 50, 530 P.2d 317 (1975) ("due process of law requires that the information contain specific allegations . . . putting the accused person upon notice that enhanced consequences will flow with a conviction"); State v. Frazier, 81 Wash.2d 628, 635, 503 P.2d 1073 (1972) ("where a greater punishment will be imposed . . . notice of this must be set forth in the information") (citing State v. Nass, 76 Wash.2d 368, 456 P.2d 347 (1969)); State v. Porter, 81 Wash.2d 663, 663-64, 504 P.2d 301 (1972) (where "[t]here was no indication of [mandatory minimum sentence] in the information" the matter had to be "remanded for resentencing"); In re Bush, 26 Wash.App. 486, 490, 616 P.2d 666 (1980), aff'd, 95 Wash.2d 551, 627 P.2d 953 (1981) ("due process of law requires that the information contain specific allegations . . . putting the accused person upon notice that enhanced consequences will flow with a conviction") (quoting Cosner, 85 Wash.2d at 50, 530 P.2d 317); State v. Shaffer, 18 Wash.App. 652, 655, 571 P.2d 220 (1977), review denied, 90 Wash.2d 1014, cert. denied, 439 U.S. 1050, 99 S.Ct. 729, 58 L.Ed.2d 710 (1978) ("due process of law requires that the information contain specific allegations. . . putting the accused person upon notice that enhanced consequences will flow with a conviction") (quoting Cosner, 85 Wash.2d at 50, 530 P.2d 317); State v. Stamm, 16 Wash.App. 603, 616, 618, 559 P.2d 1 (1976), review denied, 91 Wash.2d 1013 (1977) (due process violated absent "a specific allegation in the information of the particular enhanced penalty statute to be relied upon at sentencing"); State v. Smith, 11 Wash.App. 216, 225, 521 P.2d 1197 (1974) ("it is required that the prosecution allege . . . the `factor [which] aggravates [the] offense and causes [a] defendant to be subject to a greater punishment'"); State v. Mims, 9 Wash.App. 213, 219, 511 P.2d 1383 (1973) ("due process of law requires notice in the information of a potentially greater penalty"). The Thorne court reached a contrary result without citing or discussing any of these cases, a result that may or may not have been undermined in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). See also Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); Shepard v. United States, 544 U.S. ___, 125 S.Ct. 1254, 1264, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring).
[11] 129 Wash.2d at 779, 921 P.2d 514.
[12] 129 Wash.2d at 781, 921 P.2d 514. Even before filing an information, the State had filed an affidavit of probable cause notifying Thorne that if he were convicted, he would face a mandatory minimum sentence of life without parole. Thorne, 129 Wash.2d at 749, 921 P.2d 514. As noted in the text, the court left for another day "cases in which the failure to give any notice would have constitutional implications." Thorne, 129 Wash.2d at 781, 921 P.2d 514.
[13] 129 Wash.2d at 780-781, 921 P.2d 514 (emphasis added).
[14] Cf. Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952).
[15] State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995).
[16] McFarland, 127 Wash.2d at 334, 899 P.2d 1251.
[17] McFarland, 127 Wash.2d at 335, 899 P.2d 1251.
[18] 100 Wash.App. 259, 996 P.2d 658 (2000).
[19] McCready, 100 Wash.App. at 261, 996 P.2d 658.
[20] McCready, 100 Wash.App. at 263, 996 P.2d 658.
[21] McCready, 100 Wash.App. at 265, 996 P.2d 658.