[No. 77532-0. En Banc.]
Argued June 6, 2006. Decided December 7, 2006.

THE STATE OF WASHINGTON, *Petitioner*, v. DARNELL KEENO CRAWFORD, *Respondent*.

*Darnell K. Crawford*, pro se.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for petitioner.

*Leslie Orville Stomsvik*, for respondent.

¶1 Fairhurst, J. — Respondent Darnell Keeno Crawford was convicted of first degree robbery[1] and second degree assault[2] after stealing an MPEG[3]-1 Audio Layer 3 (MP3) player from a Tacoma Best Buy store and showing a handgun to the store employees who pursued him into the parking lot. Taking into account Crawford's prior criminal convictions, the Pierce County Superior Court sentenced him to a life sentence without the possibility of parole under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570. Before the Court of Appeals, Crawford raised two issues related to pretrial notice. First, Crawford contended that due process requires the State to provide pretrial notice that the defendant faces a mandatory life sentence. Second, Crawford alleged that his attorney provided ineffective assistance of counsel by failing to examine his prior out-of-state conviction and advise him that, if convicted, he faced a life sentence.

¶2 In a published opinion, Division Two of the Court of Appeals vacated the judgment of the trial court, holding that Crawford was denied procedural due process and the effective assistance of counsel. *State v. Crawford*, 128 Wn. App. 376, 115 P.3d 387 (2005). We find that Crawford was not denied due process or effective assistance of counsel and reverse the Court of Appeals.

## I. FACTS

¶3 Initiative 593, the POAA, commonly known as the "three strikes law," was adopted by voters in 1993. *State v. Manussier*, 129 Wn.2d 652, 659, 921 P.2d 473 (1996) (citing *State of Washington Voters Pamphlet, General Election* 4 (Nov. 2, 1993)). Under the POAA, trial courts are required to sentence "persistent offenders" to life in prison without

---

[1] RCW 9A.56.190, .200(1)(a)(i).

[2] RCW 9A.36.021(1)(c).

[3] Moving Picture Experts Group.

possibility of parole. RCW 9.94A.570.[4] A "persistent offender" is an offender who has been convicted of any felony considered a "most serious offense" under former RCW 9.94A.030(28) (2002) and who has twice previously been convicted of such offenses or equivalent offenses in other states. Former RCW 9.94A.030(32)(a)(i), (ii) (2002).

¶4 On December 26, 2002, a Best Buy employee noticed an MP3 box missing from a display and saw what appeared to be an outline of the box in Crawford's jacket.[5] The employee relayed his suspicions to a store manager, who approached Crawford and asked him to stop as he walked toward the exit. Crawford continued walking and, as he exited the store, an electronic sensor activated an alarm. The manager and another employee pursued Crawford into the parking lot, repeatedly asking him to drop the merchandise. Crawford continued walking. At one point he pulled out a gun and showed it to the individuals who were following him. Crawford then got into a waiting car and left the scene. He was later apprehended by Tacoma police. The State charged Crawford with first degree robbery and second degree assault.

¶5 Crawford has an extensive criminal history, including a 1998 Washington conviction for second degree robbery[6] in Pierce County and a 1993 Kentucky conviction for first degree sex abuse.[7] While the prosecutor and the defense were aware of Crawford's prior Pierce County convictions and realized that the second degree robbery conviction qualified as a strike offense, neither was aware of the Kentucky conviction.

¶6 The State calculated Crawford's offender score as a five for each count and, at a January 2003 pretrial confer-

---

[4] "Notwithstanding the statutory maximum sentence or any other provision of this chapter, a persistent offender shall be sentenced to a term of total confinement for life without the possibility of release or, when authorized by RCW 10.95.030 for the crime of aggravated murder in the first degree, sentenced to death." RCW 9.94A.570.

[5] The parties do not dispute the facts underlying Crawford's conviction.

[6] RCW 9A.56.190, .210.

[7] Ky. Rev. Stat. Ann. § 510.110.

ence, provided the defense with a criminal history compilation reflecting only Crawford's Pierce County convictions. At that time the State offered to recommend a sentence at the low end of the standard range, 57 to 75 months, in exchange for Crawford's guilty plea.[8] By February 2003, the State learned of Crawford's Kentucky criminal history and provided the defense with a new criminal history compilation.

¶7 Even after learning of Crawford's Kentucky history, neither party investigated the conviction. The parties did not engage in further plea negotiations. Thus Crawford continued to believe his standard range to be 57 to 75 months. Under this assumption, Crawford and his attorney decided to proceed to trial. Following a jury trial, Crawford was found guilty of first degree robbery and second degree assault.

¶8 By May 15, 2003, several weeks after trial, the prosecutor thoroughly reviewed Crawford's Kentucky sex abuse conviction and determined it to be a strike offense, the equivalent to the Washington crime of child molestation in the first degree.[9] The prosecutor notified Crawford's attorney that, including the Kentucky conviction, Crawford in fact had two prior strikes against him, making him subject to a mandatory minimum sentence under the POAA.

¶9 Crawford retained new counsel and filed a posttrial motion for dismissal or alternately for a new trial. At the posttrial hearing on the motion to dismiss, Crawford testified that had he known before trial that he faced a potential life sentence, he would have accepted the prosecutor's

---

[8] The "Offer and Sentencing Worksheet" notes that count I, first degree robbery, carries a standard range of 57 to 75 months and that count II, second degree assault, carries a standard range of 22 to 29 months. Under the State's original offer, Crawford's sentences would have run concurrently. Clerk's Papers (CP) at 81.

[9] RCW 9A.44.083.

offer.[10] Verbatim Report of Proceedings (July 18, 2003) (VRP) at 277. Crawford's trial attorney testified that she had not investigated Crawford's Kentucky conviction because she assumed it had been a misdemeanor. *Id.* at 302. She made this assumption because, in her experience, prosecutors in Pierce County typically provided "persistent offender notices" prior to trial in three strikes cases, an action which had not been taken here. *Id.* at 299.

¶10 Finally, while no mitigation evidence had been presented by the defense either before or at trial, at the posttrial hearing the defense called a mitigation specialist who testified that she would have put together a mitigation package for Crawford had she been notified that he faced a third strike. *Id.* at 294-95. She further stated that she had put together 12 mitigation packages in cases involving a potential third strike, all of which had been accepted by the prosecutor. *Id.* at 291.

¶11 The trial court denied Crawford's motion to dismiss and imposed a mandatory minimum sentence of life in prison without possibility of parole. In a published opinion, the Court of Appeals vacated the judgment of the trial court, finding that Crawford was denied procedural due process and denied the effective assistance of counsel. *Crawford*, 128 Wn. App. at 385. Judge J. Robin Hunt partially dissented, arguing that Crawford's conviction should be reversed solely on the ineffective assistance of counsel claim. *Id.* (Hunt, J., dissenting in part). The State appealed to this court, contending that due process does not require pretrial notice of the possibility of a life sentence under the POAA and that Crawford was not denied effective assistance of counsel.

---

[10] In a sworn statement filed after trial, the deputy prosecutor stated that even if Crawford had accepted her original offer, she had never offered to allow him to plead guilty to anything but a strike offense. CP at 85.

## II. ISSUES

¶12 A. Whether procedural due process requires that a criminal defendant receive pretrial notice of a possible life sentence under the POAA.

¶13 B. Whether Crawford was denied effective assistance of counsel when his attorney failed to examine his prior out-of-state conviction and advise him that, if convicted, he faced a life sentence.

## III. ANALYSIS

A. Procedural due process does not require that a criminal defendant receive pretrial notice of a possible life sentence under the POAA.

¶14 The right to procedural due process is guaranteed under the Washington Constitution, article I, section 3,[11] and the United States Constitution, amendments V[12] and XIV, section 1.[13] The Washington Constitution provides the same scope of protection as the United States Constitution. *Manussier*, 129 Wn.2d at 679.

¶15 We have found that the POAA is "a *sentencing* statute and not a statute defining the elements of a crime." *State v. Thorne*, 129 Wn.2d 736, 779, 921 P.2d 514 (1996) (emphasis added). As a sentencing statute, the POAA allows, but does not mandate, notification to offenders who have been convicted of a "most serious offense." *Id.* (citing former RCW 9.94A.393 (1994), *recodified as* RCW 9.94A.561[14] (LAWS OF 2001, ch. 10, § 6)). The legislature has the authority to set such sentencing procedures. *Id.* at 778

---

[11] "No person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, § 3.

[12] "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V.

[13] "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1.

[14] "A sentencing judge, law enforcement agency, or state or local correctional facility *may*, but *is not required to*, give offenders who have been convicted of an offense that is a most serious offense as defined in RCW 9.94A.030 either written or oral notice, or both, of the sanctions imposed upon persistent offenders." RCW 9.94A.561 (emphasis added).

(citing *State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718 P.2d 796 (1986)). We will not mandate greater procedural protections than those required by statute unless those requirements violate a constitutional guaranty. *Thorne*, 129 Wn.2d at 778. Thus, we will not require pretrial notice of possible sentencing under the POAA unless the lack of notice allowed under the statute violates the defendant's right to procedural due process.

¶16 The State argues that the Court of Appeals decision below conflicts with United States Supreme Court precedent and our previous decisions regarding the POAA. In concluding that Crawford was denied due process, the Court of Appeals relied on *Thorne*, where we found due process did not require that a formal charge be filed in order to sentence a defendant as a persistent offender. 129 Wn.2d at 779. But because there was actual notice given to the defendant in *Thorne*, we left open the possibility of "cases in which the failure to give notice would have constitutional implications." *Id.* at 781. Relying on our dicta in *Thorne*, the Court of Appeals found *Crawford* to be such a case, noting that "[i]t is fundamentally unfair for the State not to notify a person before trial that he may be subject to a mandatory sentence of life without parole. The person needs to know that such a sentence is possible when deciding . . . whether trial or plea is the better alternative." *Crawford*, 128 Wn. App. at 383. In reaching its holding, the Court of Appeals cited "many times" in which Washington courts have held that "due process requires the State to formally allege a mandatory minimum term in its information." *Id.* at 381 n.10. But these cases simply illustrate the rule that prosecutors must set forth their intent to seek enhanced penalties for the *underlying* crime in the information and are not applicable where, as here, a defendant faces potential sentencing consequences because of convictions for *prior* crimes.[15]

---

[15] *See, e.g.*, *In re Pers. Restraint of Bush*, 95 Wn.2d 551, 553, 627 P.2d 953 (1981) (noting that deadly weapon allegations must be included in the information where defendant is charged with robbery while armed with a deadly weapon); *State v. Theroff*, 95 Wn.2d 385, 622 P.2d 1240 (1980) (remanding for resentencing where jury found by special interrogatory that defendant was armed with deadly weapon

¶17 Contrary to the Court of Appeals decision below, the United States Supreme Court and this court have repeatedly rejected the argument that pretrial notice of enhanced penalties for recidivism is constitutionally required. In *Olyer v. Boles*, the United States Supreme Court held that due process does not require the State to give criminal defendants notice that they may be subject to an habitual offender sentence prior to trial on the substantive offense. 368 U.S. 448, 452, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962). The Court also found, however, that where a determination of whether a defendant is an habitual offender is separate from the criminal charges, due process does require that a defendant receive reasonable notice and an opportunity to be heard relative to the recidivist charge. *Id.*

¶18 Similarly, we have recognized that while due process requires that the defendant receive formal notice of criminal charges, "we do not extend such constitutional notice to the *penalty* exacted for conviction of the crime." *State v. Clark*, 129 Wn.2d 805, 811, 920 P.2d 187 (1996) (citing *State v. Lei*, 59 Wn.2d 1, 3, 365 P.2d 609 (1961)). We have previously applied this reasoning in *Lei*, where we upheld a defendant's sentence as an habitual offender under RCW 9.92.090.[16] 59 Wn.2d at 2. There the petitioner was found guilty of robbery and, before being sentenced, the State filed supplemental information alleging prior out-of-state con-

upon commission of the crime, but prosecutor had neglected to file notice advising defendant that the State intended to seek an enhanced penalty); *State v. Frazier*, 81 Wn.2d 628, 633, 503 P.2d 1073 (1972) ("Where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue . . . must be presented to the jury . . . before the court can impose the harsher penalty." (citing *State v. Nass*, 76 Wn.2d 368, 456 P.2d 347 (1969))).

[16] RCW 9.92.090 states:

Every person convicted in this state of any crimes of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been twice convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in a state correctional facility for not less than ten years.

victions. *Id.* We found that formal notice was not required because the habitual offender statute did not establish a substantive offense, but instead established that a mandatory penalty be imposed upon a third felony conviction. *Id.* at 3.

¶19 Finally, in specifically addressing the POAA, we have noted that because essential elements of a crime must be stated in a charging document, the POAA would violate a defendant's due process rights *only* if it created a separate offense that was not set forth in the charging document. *Thorne*, 129 Wn.2d at 779 (citing *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991)). But since the POAA does not define the elements of a crime, we have held that prior convictions resulting in a life sentence under the POAA need not be pleaded in the information, submitted to a jury, or proved beyond a reasonable doubt. *State v. Wheeler*, 145 Wn.2d 116, 117, 34 P.3d 799 (2001).

¶20 Because the POAA is a sentencing statute, Crawford had no constitutional right to pretrial notice that he faced the possibility of being sentenced as a persistent offender. As required under *Olyer*, 368 U.S. at 452, Crawford was, in fact, given notice and the opportunity to be heard before being sentenced. VRP (July 18, 2003) at 335.

¶21 We clarify today that pretrial notice of a possible sentence under the POAA is not constitutionally mandated. In so doing, we acknowledge that a rule requiring such notice in all circumstances would "place a difficult burden on the imposition of a recidivist penalty" since the fact of such prior convictions is often not known to prosecutors before trial. *Olyer*, 368 U.S. at 452 n.6. We emphasize, however, that where a possible life sentence is at stake, providing notice is the best practice. *Thorne*, 129 Wn.2d at 780-81. While the constitution does not guarantee a right to plea bargain, we recognize that notice provides a criminal defendant with the important opportunity to weigh his or her options and to intelligently decide between accepting a plea bargain and proceeding to trial. *Manussier*, 129 Wn.2d at 681 n.118 (citing *Weatherford v. Bursey*, 429 U.S. 545, 97

S. Ct. 837, 51 L. Ed. 2d 30 (1977)); *Crawford*, 128 Wn. App. at 383.

B.  Crawford was not denied effective assistance of counsel when his attorney failed to examine his prior out-of-state conviction and advise him that, if convicted, he faced a life sentence.

¶22 A criminal defendant has the right to assistance of counsel under the Sixth Amendment to the United States Constitution. We consider this right to be " 'the right to the effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). To show that counsel provided ineffective assistance, a defendant must show:

> (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). Reversal of a lower court decision is required where the defendant demonstrates *both* deficient performance and resulting prejudice. *Strickland*, 466 U.S. at 687. We address performance and prejudice in turn. Because we find Crawford has not demonstrated actual prejudice, we also conclude that he was not denied effective assistance of counsel.

¶23 The State argues that the Court of Appeals erred in finding deficient performance because "[t]he court gave no weight to the fact that trial counsel had inquired of [Crawford] as to the nature of his prior convictions and that his representations led her to believe that the out of state convictions were not serious." Suppl. Br. of Pet'r at 14. We

disagree with the State and conclude that the Court of Appeals correctly found counsel's performance deficient. Even if counsel gave weight to Crawford's wishes in proceeding to trial, it was unreasonable under the circumstances to neglect to investigate Crawford's prior convictions.

¶24 In evaluating a claim for ineffective assistance of counsel, "the performance inquiry must be whether counsel's assistance was *reasonable* considering all the circumstances." *Strickland*, 466 U.S. at 688 (emphasis added). In engaging in this inquiry, we are highly deferential to the performance of counsel. *Id.* at 689. A defendant can overcome the presumption of effective representation by demonstrating "that counsel failed to conduct appropriate investigations." *Thomas*, 109 Wn.2d at 230 (citing *State v. Jury*, 19 Wn. App. 256, 263, 576 P.2d 1302 (1978)). The defendant may also meet this burden by demonstrating "the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336; *see also State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991); *State v. Adams*, 91 Wn.2d 86, 90, 586 P.2d 1168 (1978).

¶25 The State contends that the Court of Appeals erred in finding deficient performance under our decisions in *In re Personal Restraint of Jeffries*, 110 Wn.2d 326, 752 P.2d 1338 (1988) and *State v. Benn*, 120 Wn.2d 631, 663-65, 845 P.2d 289 (1993). The State's comparison is misplaced. In *Jeffries*, we denied an ineffective assistance of counsel claim where defense counsel neglected to call witnesses whose testimony would have provided mitigation evidence. We found counsel's actions reasonable because the defendant had specifically stated his wishes that the witnesses not testify and, furthermore, because calling the witnesses likely would have resulted in the defendant's extensive criminal record being put before the jury in rebuttal. *Jeffries*, 110 Wn.2d at 331-33. In *Benn*, we denied an ineffective assistance of counsel claim where the defendant claimed defense counsel had failed to adequately investigate mitigating factors to

present prior to the filing of a special sentencing notice. We found that counsel made a tactical decision to offer limited mitigation evidence after conferring with the defendant since other mitigation evidence would have been inconsistent with defense strategy. *Benn*, 120 Wn.2d at 663-65.

¶26 Like *Jeffries* and *Benn*, here, defense counsel did comply with Crawford's wishes in rejecting the State's plea offer. VRP at 310. But unlike *Benn* and *Jeffries*, there was no tactical basis for counsel's performance. The State alerted defense counsel a month prior to trial of the Kentucky conviction. *Id.* at 301. Defense counsel did not investigate the conviction, even though the information given to her by the State indicated that the Kentucky conviction qualified as an "adult felony" conviction. *Id.* at 309. A reasonable attorney who knew of her client's extensive criminal record and out-of-state conviction would have investigated prior to recommending trial as the best option. Because there was no tactical reason for such behavior, we find that counsel's failure to investigate Crawford's criminal history amounted to unreasonable performance.

¶27 The State next contends that the Court of Appeals erred in finding defense counsel's performance prejudicial to Crawford. Crawford alternately argues that the Court of Appeals reached the correct conclusion because, had Crawford "been informed of the severity of [the] potential penalty he faced, mitigating evidence could have been prepared and presented on his behalf and plea negotiations . . . could have been undertaken." Resp't's Reply to Pet. for Review at 5-6. We agree with the State and find that Crawford has not demonstrated prejudice.

¶28 Even deficient performance by counsel "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. A defendant must *affirmatively prove prejudice*, not simply show that "the errors had some conceivable effect on the outcome." *Id.* at 693. In doing so, "[t]he defendant must show that there is a reasonable probability that, *but for* counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[17] *Id.* at 694 (emphasis added).

¶29 Even though Crawford testified that he would have pleaded guilty to a lengthy sentence rather than proceed to trial had he known that he faced a possible third strike, he does not establish a "reasonable probability that, but for" his counsel's deficient performance, he would have avoided a life sentence. *Id.*

¶30 First, there is no indication that the prosecutor was willing to offer Crawford the option of pleading guilty to a nonstrike offense. While the original "Offer and Sentencing Worksheet" presented to Crawford does illustrate that the prosecutor was willing to offer a sentence at the low end of the standard range for his charges, it does not indicate that the State intended to charge Crawford with anything but a strike offense. Furthermore, Crawford presents no evidence that the prosecutor would have offered to allow him to plead guilty to a lesser offense had the parties understood the Kentucky conviction to be a strike offense.

¶31 Second, it is highly speculative to conclude that the prosecutor would seek to charge a defendant with a nonstrike offense in such a case. As we have previously noted, the POAA reduces a prosecutor's flexibility in plea bargaining because the list of "most serious offenses" is comprehensive and includes crimes with high standard range sentences. *Manussier*, 129 Wn.2d at 681 n.118. Thus, "[a] prosecutor considering a plea bargain in a case falling under [the POAA] would usually be forced to choose between a relatively low standard range sentence and life without parole. This virtually precludes the prosecutor from plea bargaining." *Id.* Given the limited flexibility prosecutors have in plea bargain-

---

[17] We do not require the defendant to "*guarantee*" the outcome would have been different as the dissent asserts. Dissent at 106. The test requires the defendant to show there is a *reasonable* probability that the outcome would have been different absent counsel's ineffective performance. The dissent's attempt to minimize the test requirements by calling it a "mere reasonable probability" verges on reducing it to a nullity.

ing in such cases, we are unwilling to speculate here that the prosecutor would have agreed to charge Crawford with a lesser offense.

¶32 Third, the POAA grants no discretion to judges or prosecutors in the sentencing of persistent offenders.[18] *Thorne*, 129 Wn.2d at 768. The statutory language is unambiguous: every persistent offender must be sentenced to life in prison without possibility of parole. *Id.* at 765. Thus, Crawford would necessarily have been sentenced as a persistent offender *unless* the prosecutor had allowed him to plead guilty to a nonstrike offense prior to sentencing.[19]

¶33 Finally, Crawford presents no mitigation evidence. We have previously denied an ineffective assistance of counsel claim where the petitioner failed to demonstrate additional mitigation evidence that counsel could have offered. *Benn*, 120 Wn.2d at 665-66. Here, defense counsel testified that she would have "take[n] a very serious posture towards the case" had she been notified of a potential third strike before trial and would have hired a mitigation specialist to prepare a mitigation package to present to the prosecution on Crawford's behalf. VRP at 299-300. But the mitigation specialist who testified posttrial for the defense *did not* examine Crawford's criminal or personal history,

---

[18] The dissent challenges the relevance of our discussion of the State's lack of discretion to consider a plea bargain during the sentencing phase because Crawford was denied his constitutional right to effective assistance of counsel pretrial. Dissent at 106 n.22. We discuss the State's lack of discretion *at sentencing* to underscore the fact that the defendant must show the State would have considered a plea bargain *pretrial* in order to establish a reasonable probability that, but for his counsel's deficient performance, he would have avoided a life sentence.

[19] The State cites the following steps as necessary in resolving a three strikes case with a plea to a nonstrike offense: (1) there is mitigating information to submit to the prosecutor; (2) the mitigating information is of such a sufficiently compelling nature that the prosecutor is willing to offer a plea agreement to a nonstrike offense; (3) the prosecutor and defense counsel are able to formulate a plea agreement that allows the defendant to plead guilty to a nonstrike offense but still provides a sentence long enough to remove a recidivist offender from the community for a sufficient period; (4) the defendant agrees to plead guilty to a lengthy sentence; (5) the trial court, after hearing the plea agreement disclosure and any input from victims, approves the agreement. Pet. for Review at 16.

and presented *no* mitigation evidence on his behalf. VRP at 294.

¶34 Even if a mitigation specialist had presented a mitigation package on Crawford's behalf, a reduction in charges would not automatically result. The State had no obligation to accept a mitigation package or even to engage in plea negotiations. RCW 9.94A.421 ("The prosecutor and the attorney for the defendant, or the defendant when acting pro se, *may* engage in discussions with a view toward reaching [a plea] agreement . . . ." (emphasis added)). And even if the State had agreed to less serious charges in exchange for Crawford's guilty plea, the trial judge would have retained discretion over whether to accept or reject a plea agreement. RCW 9.94A.431(2).

¶35 In light of Crawford's extensive criminal history and the lack of mitigation evidence in the record, Crawford has not demonstrated a reasonable probability that, *but for* his counsel's error, he would have succeeded in avoiding sentencing under the POAA. The dissent concludes a series of events occurred that, but for the ineffective representation by Crawford's counsel, might have changed the outcome of Crawford's case. Dissent at 107-08. However, we reiterate that the test requires more than the existence of events that *might* have changed the outcome. It requires the defendant to *affirmatively prove prejudice. See supra* pp. 99-100. Because Crawford has not demonstrated prejudice, his claim for ineffective assistance of counsel fails.

¶36 Accordingly, the judgment of the Court of Appeals is reversed, and the judgment of the trial court reinstated.

## IV. CONCLUSION

¶37 We hold that procedural due process does not require that a criminal defendant receive pretrial notice of a possible life sentence under the POAA. We further hold that Crawford was not denied effective assistance of counsel. While Crawford has demonstrated that counsel acted unreasonably in not investigating his prior convictions, he has

not met his burden of showing prejudice. We reverse the Court of Appeals and reinstate the judgment of the trial court.

ALEXANDER, C.J., and MADSEN, BRIDGE, and J.M. JOHNSON, JJ., concur.

¶38 C. JOHNSON, J. (dissenting) — At the critical time Darnell Crawford needed effective assistance of counsel to advise him on how to proceed with his defense, he was denied that constitutional right. As a result of his counsel's deficient performance, he chose to proceed to trial completely unaware that if found guilty, he would be sentenced to life in prison without any possibility of parolè. The majority correctly recognizes, as did the Court of Appeals, Crawford's counsel's performance was deficient, yet erroneously concludes that Crawford has not established he was prejudiced by the deficient performance.

¶39 Applying the correct standard of review, Crawford has amply shown prejudice. Crawford established that the deficient performance of counsel denied him any opportunity to attempt to negotiate a plea bargain. The State concedes this opportunity exists. In practice, the State endorses pleas to non-strike offenses in some cases. Furthermore, Crawford has established through testimony that had he known it was a third strike offense, a mitigation package would have been prepared. A "mitigation specialist" from the office of assigned counsel testified she had been successful in all 12 third strike cases in which she had any involvement. Clerk's Papers (CP) at 291. The specialist testified there are "always" mitigating circumstances. CP at 291. The reasonable probability that the result would have been different has been established. The conviction should be vacated and the case remanded to the trial court to the pretrial stage to begin again.

¶40 The facts supporting the charge in this case establish that Crawford shoplifted an MP3[20] player from a Tacoma Best Buy store, the crime being elevated to first degree robbery and assault when Crawford displayed a firearm to the individuals who chased him into the parking lot. This happened on December 26, 2002, and Crawford was arrested and charged at that time. The State presented its offer sheet on January 15, 2003. The State concedes the offer sheet did not indicate Crawford had two prior "strikes." The State admits it became aware of the extent of Crawford's criminal record on February 24, 2003, did no comparability analysis, and did not revise its offer sheet. Nor did defense counsel do a comparability analysis. It was not until a month *after trial* that the State determined and defense counsel realized the conviction was a third strike. Based on these events, the Court of Appeals and the majority correctly conclude that defense counsel's performance was deficient for failing to fully investigate Crawford's criminal history. *State v. Crawford*, 128 Wn. App. 376, 384, 115 P.3d 387 (2005); majority at 97-98. The only issue centers on whether Crawford suffered prejudice.

¶41 The test for prejudice requires the defendant show "there is a *reasonable probability* that, but for counsel's . . . errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (emphasis added). The majority misapplies this standard in concluding Crawford has not established prejudice. We need not be certain the errors of counsel determined the outcome. In fact, "[t]he result of a proceeding can be rendered unreliable . . . even if the errors of counsel cannot be shown by a *preponderance* of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694 (emphasis added). Instead, a mere reasonable probability of a different outcome is all that is required.

---

[20] MPEG (Moving Picture Experts Group)-1 Audio Layer 3.

¶42 The reasonable probability standard was purposefully constructed to stress the defendant's constitutional right to counsel and should not be confused with tests that present a higher standard of proof and protect finality of the proceedings. The reasonable probability standard is not as stringent as, for example, the standard for newly discovered evidence claims. For those claims, the court can presume the proceeding was otherwise accurate and fair.[21] When presented with an ineffective assistance claim, no such presumption exists.

¶43 A more lenient standard is appropriate here because "one of the crucial assurances" of a reliable result is missing entirely. *Strickland*, 466 U.S. at 694. Missing a crucial assurance of a reliable result, "finality concerns are somewhat weaker," *id.*, and the defendant's constitutional right to effective assistance of counsel is more prominent. Hence, applying the proper standard is crucial to upholding a defendant's constitutional right to effective representation.

¶44 A false assumption about plea bargains causes the majority to presume this standard cannot be met. Reasoning from the abstract, the majority concludes it is "highly speculative" the prosecutor would charge Crawford with a non-strike offense. Majority at 100 (citing *State v. Manussier*, 129 Wn.2d 652, 681 n.118, 921 P.2d 473 (1996)). *Manussier*, in commenting on the effect of POAA (Persistent Offender Accountability Act, RCW 9.94A.570) on plea bargains, noted that prosecutors have less flexibility under POAA and further suggested the prosecutor loses the ability to plea bargain. *Manussier*, 129 Wn.2d at 681 n.118. However, *Manussier* does not hold nor does it support the majority's conclusion that the State has no discretion to plea bargain.

¶45 Empirically, we know prosecutors have discretion to offer pleas in third strike cases. We have reviewed cases where the State has entered a plea bargain to a non-strike

---

[21] A newly discovered evidence claim "presupposes that all the essential elements of a presumptively accurate and fair proceeding were present . . . ." *Strickland*, 466 U.S. at 694.

offense in exchange for a lengthy prison sentence. *See In re Pers. Restraint of West*, 154 Wn.2d 204, 206, 110 P.3d 1122 (2005) (first degree theft in place of first degree robbery).

¶46 This discretion is also recognized by the State in its concession that it has adopted five criteria for "resolving a three strikes case with a plea to a non-strike offense . . . ." Pet. for Review at 16. The State considers whether there is mitigating information, whether the information is "sufficiently compelling," and whether the resulting agreement removes a recidivist for a sufficient period. The defendant must agree to plead guilty to a lengthy sentence. Finally, the trial court needs to approve the agreement.[22] Majority at 100. The State has substantially more discretion than was outlined by the *Manussier* comment, and the majority errs by suggesting otherwise.

¶47 The majority ignores the prejudice to Crawford because Crawford cannot *guarantee* the State would have plea bargained to a non-strike offense. The appropriate analysis emphasizes the probability of success, not the odds of failure. We intentionally do not require defendants to prove that the deficient performance "more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693-94. The bar is much more forgiving. Prejudice exists if "there is *a reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a *probability sufficient to undermine confidence in the outcome.*" *Strickland*, 466 U.S. at 694 (emphasis added).

¶48 Here, a different outcome was shown to be reasonably probable. Crawford has presented the testimony of a mitigation specialist who had mitigated 12 third strike cases. In every case in which she had any involvement, she

---

[22] While the majority correctly recognizes POAA grants no discretion at the *sentencing* phase, that is irrelevant. In this case, Crawford was denied his constitutional right to effective assistance of counsel at the pretrial stage of the proceedings. At that stage, the State has discretion to reduce the charge to a non-strike offense.

had been successful.[23] She testified a mitigation package would have been prepared for Crawford if anyone had called on her to do so. At the very least, Crawford should have a chance to present a mitigation package.

¶49 We know Crawford was not informed of the sentencing consequences and premised his decision to go to trial on erroneous information. We also know Crawford's counsel, acting on this erroneous assumption, did not present a mitigation package and would have prepared one. We know she would have pursued her case more aggressively.[24] We know the prosecutor did not know the nature of the Kentucky offense. We know the State has standards to apply in exercising its discretion and did not in this case because the State was unaware of the third strike. We know the mitigation specialist had successfully presented mitigation packages in every third strike case in which she was involved: 12 in all. But for his counsel's ineffective representation, a series of events did not occur, each of which might have changed the outcome of Crawford's case.

¶50 The remedy for counsel's ineffective assistance can be only to put the defendant back in the position he would have been in if the Sixth Amendment violation had not

---

[23] The Pierce County "mitigation specialist" testified that a mitigation package is a collection of information that seeks to explain the defendant's behavior. CP at 290. To compile a package involves collecting records, interviewing family members, reviewing past crimes, and compiling a social history. CP at 290, 294. The specialist testified that among the many possible mitigating issues, family trauma is "often" a factor. CP at 290. Furthermore, the defendant's poverty is often a factor in explaining crimes that occur during the holidays. CP at 292. As noted earlier, Crawford's act of shoplifting occurred the day after Christmas. The package also includes recommendations for avoiding future offenses. CP at 290. The specialist had been employed by the Department of Assigned Counsel since 1990.

[24] Crawford's original counsel gave several examples of things she would have done differently if she had known it was a third strike case. She would have hired an investigator. CP at 299. She would have sought a longer amount of time to prepare the case. CP at 300. She also would have worked hard to negotiate a non-strike offense with the prosecutor's office. CP at 300. If the prosecutor was not inclined to accept the non-strike offense, she testified she would "seek [out] the elected official . . . ." CP at 300.

occurred. In this case the conviction should be vacated and the case remanded to the trial court to the pretrial stage.

SANDERS, CHAMBERS, and OWENS, JJ., concur with C. JOHNSON, J.