**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>            Respondent,<br><br>       v.<br><br>MARKUS ADRIAN JENKINS,<br><br>            Appellant. | No. 83703-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Markus Jenkins was convicted of two counts of violating a no-contact order related to domestic violence incidents with his former girlfriend. Jenkins appeals his judgment and sentence and argues that defense counsel provided ineffective assistance of counsel when they failed to object to inadmissible evidence. Jenkins also contends that his offender score must be corrected because three prior convictions for possession of a controlled substance are void under State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021). We affirm.

I.

Jenkins was prohibited from contacting his former girlfriend, Jocasta Harden, directly or indirectly or via a third party, or by phone or e-mail until September 14, 2023.

Jenkins was charged by amended information with 3 counts of domestic violence felony violation of a court order for contacting Harden twice on February 12, 2019, (counts 1 and 2) and once on February 13, 2019 (count 3).

Jenkins was incarcerated at the time for crimes involving Harden—domestic violence felony cyberstalking, felony domestic violence violation of a no-contact order, and domestic violence felony harassment.

Each incarcerated person has a unique, individual personal identification number (pin) for the phone system. When a call is placed from a correctional facility, a recording plays, asking the recipient whether they wish to accept a call from a correctional facility before the parties are connected. A portion of the recording plays the recorded name of the person whose pin number is being used for the call. The parties are not connected until the recipient presses "5" to accept the call.

Department of Corrections phone records show three calls were placed using Jenkins's pin to Harden's phone number. On February 12, 2019, at 9:13 p.m., Harden received a call from a number with a 360 area code. Assuming it was one of her brothers calling from prison, she answered. But because the recorded name was Jenkins, Harden did not accept the call.

About 20 minutes later, another call came in from the same number. Harden did not answer or accept the call.

On February 13, 2019, at 5:05 p.m., another call came in from the same number, but Harden did not answer or accept the call. Instead, she went to the Kent Police Department and reported the incident. The February 12 and 13 calls were the basis for the three charged crimes.

Before trial, defense counsel moved in limine to exclude evidence of prior no-contact order violations under ER 404(b). The motion did not mention any subsequent calls after February 13, 2019. As a result, the trial court only excluded the prior violations.

At trial, the jury heard evidence of the three other calls placed to Harden's number using Jenkins's pin after the charged incidents. According to a call log, Harden's number was dialed using Jenkins's pin, on February 17, February 19, and May 13, 2019. The call on February 17 was not picked up. The calls on February 19 and May 13 did not go through because Harden had requested a block on her number. The call log was admitted without objection. A recording which included the three charged calls as well as the February 17 call, was also admitted without objection. However, when the recording was played, defense counsel objected to playing the uncharged February 17 call based on relevance. The court sustained the objection.

During closing arguments, the prosecutor argued that Jenkins did not respect court orders and Harden. Specifically, the prosecutor asserted that Jenkins called Harden "not once, not twice, not three times but the[n] four, five, and six times." The prosecutor also pointed to the later calls to rebut the idea that Harden's brother may have borrowed Jenkins's pin. Defense counsel failed to object to these arguments.

After closing arguments, the parties discussed giving the exhibits to the jury. The prosecutor noted the court had sustained an objection to the relevance of the February 17 call, which was included on the recording. The trial court pointed out that the full recording had been admitted without objection and overruled the relevance objection. The jury heard the recording.

-3-

The jury found Jenkins guilty on count 1 and count 3, and not guilty on count 2. The court imposed a standard range sentence of 60 months on each count, concurrent to each other.  Jenkins appeals.

II.

Jenkins argues that defense counsel was ineffective by failing to object to the inadmissible evidence of uncharged calls.  Jenkins asserts that because counsel failed to object, the jury heard evidence of three more phone calls that occurred after the charged calls.  We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. U.S. CONST. amend. VI; CONST. art. I § 22.  To claim ineffective assistance of counsel, the appellant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  When an appellant complains of the ineffectiveness of counsel's assistance, they must show that counsel's representation fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.  If defense counsel fails to object to inadmissible evidence, then they have performed deficiently, and reversal is required if the appellant can show the result would likely have been different without the inadmissible evidence.  State v. Vazquez, 198 Wn.2d 239, 248-49, 494 P.3d 424 (2021).

Under ER 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

-4-

preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b). Washington follows the general rule that evidence of other misconduct is normally inadmissible. State v. Fletcher, 30 Wn. App. 58, 61, 631 P.2d 1026 (1981). Jenkins argues that the later phone calls were not relevant to any valid nonpropensity purpose because those uncharged calls cannot show intent or motive because both, to be relevant, must have existed at the time of the charged offenses. We agree that the evidence of subsequent phone calls cannot show intent or motive because those calls were made after the charged offenses. Thus, such evidence would have been inadmissible.

In any event, even if those calls were inadmissible—and thus the failure to object was deficient performance—a claim for ineffective assistance of counsel also requires Jenkins to show that the result would have been different without the inadmissible evidence.

To establish prejudice, the appellant must show that counsel's errors were so serious as to deprive them of a fair trial. Strickland, 466 U.S. at 687. The appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Speculation of a different outcome is not sufficient. State v. Crawford, 159 Wn.2d 86, 101-02, 147 P.3d 1288 (2006).

Jenkins argues that had counsel objected, a different result might have occurred. Defense counsel failed to object when the State offered a call log and recording which included the three charged calls and the February 17 call into evidence. Defense

counsel also failed to object when the State emphasized the repetitive nature of the violations.

But even if defense counsel had objected, Jenkins cannot show that the jury would have acquitted him simply because the other calls were excluded. During trial, the jury directly heard from the victim and heard the actual recording of the charged calls. As the State correctly points out, the later calls were an exceedingly small part of the State's case. As a result, the outcome would not likely have been different had the call log and recording not been admitted into the evidence.

III.

Jenkins argues that his offender score must be corrected because it was calculated by including three prior convictions for possession of a controlled substance. We disagree.

In Blake, the Supreme Court held that Washington's strict liability drug possession statute violated state and federal due process clauses and was thus void. 197 Wn.2d at 195. A conviction based on an unconstitutional statute must be vacated. State v. LaBounty, 17 Wn. App. 2d 576, 581, 487 P.3d 221 (2021). But a scoring error that does not affect the standard range is harmless. State v. Argo, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996).

In this case, Jenkins's offender score was calculated by including three prior drug convictions. But even without those 3 prior drug convictions, Jenkins still had 14 prior felony convictions. Thus, Jenkins's offender score would have been 9+, and the standard range would have remained the same.

We affirm.

WE CONCUR:

_Mann, J._

_Díaz, J._

_Smith, C.J._